## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| JOHN WAUDBY, ROBERT SPUNTAK and MOHAMAD IBRAHIM individually, and on behalf of others similarly situated, | No. |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendant. | |

## COMPLAINT

Plaintiffs John Waudby, Robert Spuntak and Mohamad Ibrahim (together, "Plaintiffs") bring this action against Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung"), by and through their attorneys, individually, and behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of persons and entities ("consumers") who purchased or financed a Samsung Galaxy Note7 smartphone ("Note7").

2.      As discussed in more detail below, soon after sales of the Note7 began, complaints surfaced that the Note7s were overheating and catching fire.

Accordingly, Samsung recalled the defective devices and notified consumers that they should immediately discontinue using the smartphones and exchange them for replacements.

3.     Following Samsung's advice, consumers discontinued using their Note7s only to find out that Samsung did not have replacement smartphones available.  Instead, Samsung informed consumers that they would have to wait several days, and even weeks in many cases, before receiving a replacement smartphone.

4.     During this time, and as a result of Defendant failing to provide consumers with an adequate replacement, consumers continued to incur monthly device and plan charges from their cellular carriers for phones they could not safely use.

5.     As a result of Samsung's actions, Plaintiffs and the Class have suffered injury in fact, incurred millions of dollars in fees, and have otherwise been harmed by Samsung's conduct.

6.     Accordingly, Plaintiffs bring this action and seek recovery for Defendant's breach of express warranty, breach of the covenant of good faith and fair dealing, and common law fraud.

**THE PARTIES**

7.     Plaintiff John Waudby is a resident of Nevada.  On or about August

21, 2016, Plaintiff Waudby purchased a Note7 in the state of Nevada and suffered damages as a result of Defendant's conduct.

8.     Plaintiff Robert Spuntak is a resident of Pennsylvania.  On or about August 21, 2016, Plaintiff Spuntak purchased a Note7, in the Commonwealth of Pennsylvania and suffered damages as a result of Defendant's conduct.

9.     Plaintiff Mohamad Ibrahim is a resident of California.  On or about August 24, 2016, Plaintiff Ibrahim purchased a Note7, in the state of California and suffered damages as a result of Defendant's conduct.

10.     Defendant Samsung Electronics America, Inc., is a New York corporation with its principal place of business in Ridgefield Park, New Jersey. Samsung is a wholly-owned subsidiary of Samsung Electronics Co., Ltd., which is a Korean company headquartered in Suwon, South Korea.  Defendant has been and still is engaged in the business of distributing, marketing, and selling smart phones and other products throughout United States and this district.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d) because the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendant

3

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides and is headquartered in this district, and therefore is deemed a citizen of this district.  Additionally, Defendant has advertised in this district and has received substantial revenue and profits from the sales of Note7 smartphones in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

13.     This Court has personal jurisdiction over Defendant because Samsung has conducted substantial business in this judicial district, and intentionally and purposefully placed Note7 smartphones into the stream of commerce within the District of New Jersey and throughout the United States.

## FACTUAL ALLEGATIONS

14.     On August 19, 2016, Samsung released to the market its highly touted, high-end, flagship smartphone, the Galaxy Note7, which sells for approximately $850.  Shortly after the smartphones' highly anticipated release, however, reports began to surface that the new smartphones were overheating and "exploding" in the hands of consumers.

15.     In late-August, Samsung halted shipments of the Note7 while conducting additional testing for product quality as a result of these reports.

16.     On September 2, 2016, after 35 incidents of overheating smartphones had been reported worldwide, Samsung suspended sales of the Note7 smartphone. As a result, Samsung announced the U.S. Product Exchange Program for Note7 owners and stated that the new Galaxy Note7 would be "available next week."

17.      This replacement program included an estimated 1 million phones in the United States and 2.5 million worldwide.

18.     In its announcement, Samsung stated that it had conducted a thorough investigation and had found a battery cell issue in the Note7 phones.  Samsung stated that it was working with its supplier to identify possible affected batteries in the field, but that because safety was an absolute priority, it had decided to stop sales of the Note7.  For those customers already owning a Note7, Samsung announced that it would voluntarily replace each device with a new device "over the coming weeks."

19.     On September 9, the United States Consumer Product Safety Commission ("CPSC") and Samsung issued advisories urging consumers to immediately stop using the Note7.  The CPSC told consumers "to power [the Note7] down and stop charging or using the device" while it worked with Samsung on the recall details.  Samsung Electronics America President, Tim Baxter, told consumers that Samsung was "asking users to power down their Galaxy Note7s and exchange them now."

5

20.    On September 10, DJ Koh, President of Mobile Communications Business at Samsung, further stated:

> Our number one priority is the safety of our customers. We are asking users to power down their Galaxy Note7s and exchange them as soon as possible. We are expediting replacement devices so that they can be provided through the exchange program as conveniently as possible and in compliance with related regulations.

21.    Samsung directed consumers who had Note7 devices to contact their place of purchase or call their designated local call center as soon as possible to exchange their device for a new Galaxy Note7 (with an updated battery). Alternatively, consumers could choose to exchange their Note7 for a Galaxy S7 or Galaxy S7 Edge, both of which are less expensive and offer less advanced technology than the Note7.

22.    Consumers quickly learned that although Samsung announced its recall on September 2 and told consumers to immediately exchange their smartphones on September 9, that replacement Note7s were not available.

23.    It was not until September 21 that Samsung announced that it would begin the Note7 exchanges nationwide. And even on that date, only an estimated 500,000 replacement devices had arrived in the United States. In fact, as of September 27, approximately 40 percent of the unsafe Note7s sold in South Korea and the United States still had not been replaced with new devices.

24.    Consumers were left without the safe use of smartphones that they

had purchased, while waiting approximately three weeks (or more) for the replacement Note7s to become locally available for exchange.  During this time, consumers continued to incur monthly device and plan charges associated with their Note7s.

25.     Plaintiff Waudby purchased a Note7 on August 21, 2016, and incurred monthly device charges and monthly plan charges that have not been reimbursed through the Samsung recall program or other third parties.

26.     Plaintiff Spuntak purchased a Note7 on August 26, 2016, and incurred monthly device charges and monthly plan charges that have not been reimbursed through the Samsung recall program or other third parties.

27.     Plaintiff Ibrahim purchased a Note7 on August 24, 2016, and incurred monthly device charges and monthly plan charges that have not been reimbursed through the Samsung recall program or other third parties.

28.     On October 11, just as consumers were finally starting to receive their replacement smartphones, Samsung announced that it was discontinuing the Galaxy Note7 entirely.  Samsung's decision followed reports of some replacement devices (with new batteries) also exploding.  In fact, at least three owners of replacement Note7s reported fires with their replacement devices, including one Note7 that caught fire on a Southwest Airlines flight necessitating an evacuation of the airplane.

29.     On October 14, the Department of Transportation (DOT) issued an "emergency order to ban all Samsung Galaxy Note7 smartphone devices from air transportation in the United States. Individuals who own or possess a Samsung Galaxy Note7 device may not transport the device on their person, in carry-on baggage, or in checked baggage on flights to, from, or within the United States. This prohibition includes all Samsung Galaxy Note7 devices. The phones also cannot be shipped as air cargo."

30.     The DOT announcement further stated "[i]f passengers attempt to travel by air with their Samsung Galaxy Note7 devices, the phones may be confiscated and passengers may face fines."

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23(a), 23(b)(2), and/or 23(b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

32.     Plaintiff seeks to represent the following "Nationwide Class":

> All persons and entities in the United States who purchased or leased a Samsung Galaxy Note7.

33.     In the alternative, Plaintiffs seek to represent the following state sub-

classes:

> All persons and entities in Nevada that purchased or financed a Samsung Galaxy Note7 (the "Nevada Class").

> All persons and entities in Pennsylvania that purchased or financed a Samsung Galaxy Note7 (the "Pennsylvania Class").

> All persons and entities in California that purchased or financed a Samsung Galaxy Note7 (the "California Class").

34.     The Nationwide Class, Nevada Class, Pennsylvania Class and California Class will be referred to collectively as the "Class" for purposes of Plaintiffs' claims.

35.     Excluded from all classes are the Judge(s) to whom this case is assigned and any member of the Judge's immediate family, along with Defendant's employees, officers, directors, agents, and representatives and their immediate family members.  Also excluded are those persons who have suffered personal injuries as a result of the facts alleged herein.

36.     *Numerosity:* Members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members remains unknown at this time, upon information and belief, there are hundreds of thousands of putative Class members throughout the United States who are generally ascertainable by appropriate discovery.

9

37.    ***Commonality:*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following;

      a.   Whether Samsung engaged in the conduct alleged herein;

      b.   Whether Samsung breached any warranties through its conduct as alleged herein;

      c.   Whether Plaintiffs and other Class members are entitled to restitution for monthly device and plan charges for phones they could not safely use during the relevant period;

      d.   Whether Plaintiff and other Class members are entitled to recover compensatory damages as a result of Samsung's breach of warranty.

38.    ***Typicality***: Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all members of the Class were injured through the common misconduct described above and were subject to Samsung's breach of warranty.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

39.    ***Adequacy of Representation:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the

Class.  Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.  Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

40.  *Superiority:*  The class litigation is an appropriate method for fair and efficient adjudication of the claims involved.  Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require.  Class action treatment will permit the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical.

41.  The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Samsung would necessarily gain an unconscionable advantage

since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

42.     Plaintiffs reserve the right to modify or amend the definition of the proposed class and subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

43.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

44.     Individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Member resulting from Samsung's wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of

12

individual Class members prosecuting separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual Class members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

45.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

46.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

13

## COUNT I
## BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania, California and Nevada Classes)**

47.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

48.     Defendant expressly warranted to Plaintiffs and the Class members that the Note7s were of high quality and, at a minimum, safe.

49.     Defendant breached this warranty by selling to Plaintiffs and the Class members Note7s that were subject to a known and dangerous defect and known to fail prematurely.

50.     As a result of Defendant's actions, Plaintiffs have suffered economic damages including but not limited to monthly charges and fees, loss of use of the Note7, substantial loss in value and resale value of their Note7s, and other related damage.

51.     Defendant's attempt to disclaim or limit these express warranties is unconscionable and unenforceable under the circumstances here.  Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

52.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT II**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania,**
**California and Nevada Classes)**

53.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

54.     Defendant made material misstatements and omissions concerning the availability of replacement Note7s.

55.     As a result, Plaintiffs and Class members were fraudulently induced to continue incurring and paying monthly charges and fees for their Note7s, which they could neither use nor replace.

56.     These misstatements and omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiffs and Class memebrs rely upon them.

57.     Plaintiffs and Class members reasonably relied on these misstatements and omissions, and suffered damages as a result.

**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class or, Alternatively, the Pennsylvania,**
**California and Nevada Classes)**

58.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

59.     Every contract in New Jersey, Pennsylvania, California and Nevada

15

contains an implied covenant of good faith and fair dealing.

60.     Defendant breached the covenant of good faith and fair dealing by failing to notify Plaintiffs and Class members that replacement Note7s would not be made available in a timely manner, or that the Note7 would be discontinued entirely.

61.     Defendant acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.      appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Note7s and to extend the applicable warranties for a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.  award reasonable attorney's fees and costs; and

G.  grant such further relief that this Court deems appropriate.

Dated:  October 14, 2016

Respectfully submitted,

**McCuneWright, LLP**

By:  *//s// Joseph G. Sauder*
      Joseph G. Sauder
      Matthew D. Schelkopf (030362002)
      Joseph B. Kenney
      555 Lancaster Avenue
      Berwyn, PA 19312
      Telephone: (610) 200-0580
      jgs@mccunewright.com
      mds@mccunewright.com
      jbk@mccunewright.com

      Richard D. McCune
      David C. Wright
      Emily J. Kirk

17

2068 Orange Tree Lane, Suite 216
Redlands, California 92374
Telephone: (909) 557-1250
Facsimile: (909) 557-1275
rdm@mccunewright.com
dcw@mccunewright.com
ejk@mccunewright.com